430 So.2d 210 (1983)
LaRita MIXON
v.
NEW ORLEANS POLICE DEPARTMENT.
No. CA-0449.
Court of Appeal of Louisiana, Fourth Circuit.
April 4, 1983.
*211 Salvador Anzelmo, City Atty., Bernette J. Johnson, Asst. City Atty., New Orleans, for New Orleans Police Dept.
James P. Dahlberg, New Orleans Legal Assistance Corp., New Orleans, for Mixon.
Before GULOTTA, BARRY and LOBRANO, JJ.
GULOTTA, Judge.
The City of New Orleans appeals from the Civil Service Commission's decision reinstating LaRita Mixon to her former position with the New Orleans Police Department (NOPD) on a finding that her dismissal had unlawfully resulted from age discrimination. We affirm.
Ms. Mixon was fifty-five years of age when dismissed from her position as a justice planning associate for the NOPD during her period of probationary employment. She was employed on February 11, 1979, and discharged on January 25, 1980. On Mixon's appeal of her dismissal, the Commission concluded, after a hearing, that age discrimination was a "determinative factor" in her dismissal.
Appealing, the City contends the Commission erroneously applied federal jurisprudence (relating to burden of proof) interpreting the Federal Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-634, instead of adhering to LSA-Const. Art. 10 § 8(B), which provides that the employee has the burden of proving discrimination in proceedings before the Civil Service Commission. The City further argues that the evidence is insufficient to support the Commission's finding of age discrimination.
At the outset, we find merit to the contention that the Commission erred in using federal jurisprudence to establish proof of discrimination. Citing federal cases, the Commission determined that once the plaintiff establishes a "prima facie" case of discrimination, the burden shifts to the defendant-employer "to articulate some legitimate, non-discriminatory reason for the employee's termination." The Commission further concluded that once the defendant employer carries this burden, the plaintiff must then prove by a preponderance of evidence that the reasons suggested by the defendant for termination are not legitimate, but are a "pretext" for discrimination.
LSA-Const. Art. 10 § 8(B) specifies that in Civil Service discrimination cases, "The burden of proof on appeal, as to the facts, shall be on the employee." This constitutional provision, not the burden of proof in federal age discrimination cases, is the proper standard of proof in our case. See Brown v. L.H.H.R.A., 346 So.2d 758 (La. App. 1st Cir.1977); Sanders v. Dept. of Health & Human Resources, 394 So.2d 629 (La.App. 1st Cir.1980), writ denied 399 So.2d 602 (1981)
In Bernard v. L.H.H.R.A.Southwest Charity, Etc., 358 So.2d 653 (La.App. 1st Cir.1978), our brothers on the First Circuit, in a Civil Service Commission hearing on sex and race discrimination allegations, applied the burden of proof requirements set forth in LSA-Const. Art. 10 § 8(B). The Bernard court rejected the claim that the discrimination tests within the meaning of Title VII of the Civil Rights Act of 1964 should be applied in the Civil Service Commission hearings. In Bernard, the court *212 stated that Title VII actions are remedies entirely distinct from state civil service appeals, and federal cases on what constitutes Title VII discrimination are not authoritive in civil service commission actions.
We find the reasoning of the Bernard decision persuasive in our case, particularly since the federal age discrimination cases relied on by the Civil Service Commission and the plaintiff apply a similar burden of proof to that applied in Title VII, sex and race discrimination cases. See Loeb v. Textron, Inc., 600 F.2d 1003 (1st Cir.1979); E.E. O.C. v. County of Allegheny, 519 F.Supp. 1328 (W.D.Penn.1981). Accordingly, we conclude the Commission erred in applying the federal burden of proof standard instead of the burden specified in LSA-Const. Art. 10 § 8(B).
Nonetheless, despite the Commission's erroneous reliance on Federal authorities, we conclude plaintiff successfully proved discrimination under the standard of proof set forth in LSA-Const. Art. 10 § 8(B). The evidence is sufficient to support the Commission's finding that Mixon was terminated because of her age.
Mixon testified that all of her supervisors were between the ages of twenty-five and thirty-five years, and that she was treated differently and fired because of her age. According to Mixon, younger employees were given help in their jobs while she was ostracized. She stated she had not been invited to a Christmas party and that her supervisors commented about her age. Sergeant Eddie Lambert, one of her supervisors, in giving a quality review, "downgraded" her appearance, saying she did not look as good as a twenty-five year old worker. Mixon also stated that she was treated differently from other employees in the use of department transportation for work related duties and was not given deadlines to complete her assignments. According to Mixon, she was not counseled concerning her job performance but rather was "nagged".
Mixon's testimony was corroborated by a co-worker, Gail Stilwell. This witness heard three supervisors make derogatory comments about Mixon's age. According to Stilwell, one supervisor, Asa French, told her Mixon was a "batty old lady", and another supervisor, Eddie Lambert, said Mixon was "old and she doesn't hear very well." Stilwell testified Mixon had a problem with deadlines because her job assignments were "vague". She stated that Mixon worked at an average speed not slower, and was thorough and hard working. Stilwell also testified that "evasive tactics" were used with Mixon when she needed a department car for her work, while younger members were allowed to use cars. According to Stilwell, Mixon was given the most "difficult" days for working around holidays.
Another co-worker, Patricia Reagon, also testified Mixon's supervisors avoided Mixon and did not accept her because of her age. According to this witness, there were many young women in the office with much "flirtation" and Mixon was not "appreciated". Reagon testified that Mixon's supervisors would laugh and ridicule her in her absence. According to Reagon, supervisor Lambert had said Mixon was old and did not hear too well, which the witness construed to be a "form of pressure and patronization" that had begun when Mixon joined the department. Also, Reagon testified Mixon was not invited to many informal parties in her department.
Sergeant Eddie Lambert denied treating Mixon differently because of her age. He did not recall making any derogatory statements about Mixon's appearance or ability to hear, and he did not recall any parties to which she was not invited. He testified that Mixon could not do her assigned work and that her termination had nothing to do with discrimination. He felt she did not understand instructions and was not qualified for the work in his department, which was done under pressure and required accuracy.
Lambert's testimony was corroborated by Asa French, another supervisor, who stated that Mixon had taken approximately a month to complete a survey that anyone else in the office would have done in three *213 to four days. French testified that he had never treated Mixon differently because of her age, and he did not recall making derogatory comments about her. He denied giving her more difficult tasks than any other employees in his division solely because of her age.
Significantly, we point out that the two counseling and evaluation reports introduced into evidence for the period of July 1, 1978 through June, 1979 gave Mixon overall ratings of competence. We further note that the NOPD monthly probationary evaluations of March through May, 1979, and September through October, 1979, rated Mixon's performance as effective and reliable, needing occasional supervision. Only the monthly evaluations of November through December, 1979 rated her performance as unsatisfactory, needing constant supervision.
The evidence considered, we conclude plaintiff successfully carried her burden of proving her termination because of age discrimination. The following comments in the Commission's written reasons for reinstatement are pertinent in summarizing this evidence.
"The picture that emerges from the testimony of all witnesses is one of poor management and supervision in the office in which appellant worked. Appellant was apparently not given clear deadlines for her various work projects and little guidance as to what was expected of her or how she should go about it. Despite this fact, she would be reprimanded for failure to get the work done quickly enough....
This is not a case of official employment policy discriminating on the basis of age. It is probably not even a case of conscious age discrimination on the part of those responsible for appellant's dismissal. The witnesses called by the Appointing Authority, both supervisors of appellant, denied any intention to discriminate against appellant. They may be entirely sincere in their testimony and discrimination may still exist. Discrimination may be subtle: it may appear and yet not find its way into official documents or formal pronouncements of policy or even customary practice. Where present, it is nonetheless unfair and disruptive of a Civil Service System based upon merit. The record in this case supports the observation by appellant's witness, Gail Stilwell, that because of her age appellant wasn't accepted by the younger people in her office; yet she is described by all witnesses as a very hard worker whose work was at least as good as that of the others in the department.... Appellant's age and her supervisor's inability to cope with somebody older than a majority of the employees in the office was a `determinative factor' in her dismissal. The dismissal was therefore contrary to law."
We adopt these reasons as our own.
Accordingly, we affirm the judgment of the Civil Service Commission.
AFFIRMED.