**ARNOLD E. JARVIS, JR., Appellee**
**v.**
**GOVERNMENT OF THE VIRGIN ISLANDS, and BRIAN GILMAN,**
**Individually and as Government Employee, Appellants**

D.C. Civ. No. 90-161
T.C. Civ. No. 89-353

District Court of the Virgin Islands

Div. of St. Croix

March 7, 1996

GEORGE W. CANNON, JR., ESQ., *for Appellee*

PAUL GIMENEZ, ESQ., Solicitor General, V.I. Department of Justice, *for Appellant*

MOORE, *Chief Judge,* District Court of the Virgin Islands; CAHN, *Chief Judge of the United States District Court for the Eastern District of Pennsylvania,* sitting by designation; and SMOCK, *Judge of the Territorial Court of the United States Virgin Islands,* Division of St. Thomas and St. John, Sitting by Designation.[1]

## OPINION OF THE COURT

Arnold E. Jarvis, Jr. ["Jarvis"] sued a Virgin Islands police officer, Brian Gilman ["Gilman"] and the Government of the Virgin

---

[1] Although Judge Smock participated in the argument and decision of this appeal, he departed from the Territorial Court bench before this opinion was handed down. The Revised Organic Act of 1954 § 23A(b), 48 U.S.C. § 1613a (1995), reprinted in V.I. CODE ANN., Historical Documents, 159 (1995) ["Revised Organic Act"]; *see In re Barrett,* V.I. BBS 91CI159A.DX2 (D.V.I. APP. Jan. 31, 1995).

Islands ["Government"] for damages allegedly resulting from Gilman's actions taken as a police officer in response to a disturbance during the Christmas Carnival in January of 1989. Jarvis's complaint sought recovery from Gilman individually for the common law tort of assault and battery ["Assault Claim"] and for the deprivation of Jarvis's civil rights by use of excessive force under 42 U.S.C. § 1983 (1994) ["1983 Claim"]. Naming Gilman in his official capacity as a police officer acting within the scope of his employment, Jarvis sought recovery against the Government for assault and battery under the Virgin Islands Tort Claims Act, V.I. CODE ANN. tit. 33, §§ 3401-3416 (1994 & Supp. 1995) ["VITCA Claim"].

The Assault and 1983 Claims against Gilman individually were tried to a jury, and the VITCA Claim against the Government was tried to the court. On May 8, 1990, the jury awarded Jarvis compensatory damages in the sum of $ 10,000 on the 1983 Claim for use of excessive force. The jury found Gilman not liable on the Assault Claim, and the court accordingly dismissed the claim against the Government. Gilman's Rule 50 motion for judgment as a matter of law[2] at the close of the evidence, and as renewed postverdict, was denied. FED. R. CIV. P. 50. Judgment was entered on May 24, 1990.[3] This appeal followed.

### FACTUAL BACKGROUND

As testified by Jarvis, the facts are as follows. On January 7, 1989, while standing on a street in Christiansted, St. Croix during Carnival activities, Jarvis was knocked down by a crowd of people, two of whom were involved in a fight. As he regained his footing, Gilman grabbed his right arm and twisted it behind his back. Gilman held Jarvis's arm in that position for approximately ten minutes even though Jarvis, his companions, and Gilman's partner, Officer Melba Jackson, told Gilman that Jarvis had not been involved in the fight. Jarvis had broken his arm in a car accident

---

[2] Although this case was tried before the 1991 Amendment to Rule 50 of the Federal Rules of Civil Procedure changed the terminology from "judgment notwithstanding the verdict" to "judgment as a matter of law," this court will employ the new language. FED. R. CIV. P. 50.

[3] The court awarded Jarvis $ 4,006.25 in costs and attorneys' fees on June 15, 1990.

several months earlier, and Gilman's actions exacerbated his condition, causing him to seek further medical attention. An emergency room doctor, Dr. Pedersen, testified that there was an aggravation of an earlier injury.

At trial, Gilman gave a very different version of the events. Gilman was informed of the fight by his partner, Officer Jackson. On arrival at the scene, Gilman saw Jarvis and another individual wrestling on the ground. Gilman pulled both individuals up, held Jarvis against the wall with his right hand against his chest, and held the other individual in an arm lock with his left hand. Gilman asked the two whether either wanted to press charges against the other, and released them when they both responded in the negative. Neither Jarvis nor the other individual was arrested. Gilman claimed he never twisted Jarvis's hand behind his back. He conceded that Jarvis did not resist.

## DISCUSSION

We must here decide whether the trial court erred in denying Gilman's motion for judgment as a matter of law at the close of Jarvis' evidence (1) to dismiss the 1983 Claim on grounds of qualified immunity because he used only reasonable force under the circumstances, and (2) again after the verdict, based on the irreconcilable inconsistency between the jury's finding of liability on the 1983 Claim and denial of liability on the Assault Claim. We affirm the trial court for the reasons stated below.[4]

### A. Standard of Review

■■ This Court has appellate jurisdiction pursuant to V.I. CODE ANN. tit. 4, § 33 (1994). A lower court's grant or denial of a motion

_____

[4] Appellant's assertion that a 1983 suit cannot be sustained against a police officer in his individual capacity if he was acting within the scope of his employment is summarily rejected since "an employee of the Territory who inflicts injury while acting in his official capacity may only be sued under section 1983 in his 'individual capacity.'" *Nibbs v. Roberts*, 31 V.I. 196, 208 (D.V.I. APP. 1995) (emphasis added). In *Nibbs*, we also discuss the interplay between section 1983 and the Virgin Islands Tort Claims Act, 33 V.I.C. §§ 3401-16 (1994 & Supp. 1995) ["VITCA"], which does allow suit to be brought against the Government and a police officer in his official capacity. *Id.* at 205. A 1983 claim against the Government and a claim against Gilman in his individual capacity under the VITCA were dismissed before trial.

for judgment as a matter of law is subject to plenary review; although it should be granted sparingly, "a scintilla of evidence is not enough to sustain a verdict of liability." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993); *see Nibbs v. Roberts*, 31 V.I. 196, 204 (D.V.I. APP. 1995). In other words, we may not overturn a verdict "unless the record is devoid of the minimum quantum of evidence from which the jury might reasonably have afforded relief." *Erysthee v. El Nuevo Lirio Grocery*, 25 V.I. 307, 310 (D.V.I. APP. 1990) (citation omitted). Moreover, the standard does not change in the context of an asserted claim of qualified immunity, *Karnes v. Skrutski*, 62 F.3d 485, 490-91 (3d Cir. 1995), and our *de novo* determination of reasonableness under the Fourth Amendment must be based on "the undisputed facts as revealed by the record and on the plaintiff's version of the facts where there are disputes." *In re City of Philadelphia Litigation*, 49 F.3d 945, 949 (3d Cir. 1995), *cert. denied*, 133 L. Ed. 2d 116, 116 S. Ct. 176 (1995). Our task is the "threshold inquiry of determining whether there is the need for a trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).

## B. The 1983 Claim

■ ■ A section 1983 plaintiff has the burden of presenting a *prima facie* case of violation of a clearly established federal statutory or constitutional right by a police officer acting under color of Territorial law. *E.g., Nibbs v. Roberts*, 31 V.I. at 213. The burden then passes to the section 1983 defendant of alleging and proving the affirmative defense of qualified immunity, namely, that his conduct conformed to what "a reasonable officer could have believed . . . to be lawful, in light of clearly established law and the information the . . . officer[] possessed." *Anderson v. Creighton*, 483 U.S. 635, 641, 97 L. Ed. 2d 523, 107 S. Ct. 3034 (1987). The defense is available even to a police officer who acted mistakenly but reasonably.

155

*Hunter v. Bryant*, 502 U.S. 224, 112 S. Ct. 534, 536, 116 L. Ed. 2d 589 (1991); *Anderson*, 483 U.S. at 641.[5]

■ Whether a police officer used excessive force in the course of an investigatory stop or other "seizure" of a free citizen must be determined using a reasonableness test, giving careful attention to the facts and circumstances of each particular case, and recognizing that the use of some coercion necessarily inheres in the officer's right to make such an investigatory stop or seizure. "[T]he severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight" are the kinds of circumstances which render the force used reasonable or unreasonable. *Graham v. Connor*, 490 U.S. 386, 396, 104 L. Ed. 2d 443, 109 S. Ct. 1865 (1989).

> [T]he "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officer['s] actions are "objectively reasonable" in light of the facts and circumstances confronting [him] without regard to [his] underlying intent or motivation. An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.

*Id.* at 397 (citations omitted).

The use of unreasonable or excessive force by a police officer in apprehending a suspect, as alleged by Jarvis, would be a violation

---

[5] Whether turning on issues of law, *see, e.g., Mitchell v. Forsyth*, 472 U.S. 511, 526, 86 L. Ed. 2d 411, 105 S. Ct. 2806 (1985), or on material questions of fact over which there is no genuine issue, *see, e.g., id.; Hunter v. Bryant*, 502 U.S. 224, 112 S. Ct. 534, 537, 116 L. Ed. 2d 589 (1991), the Supreme Court repeatedly has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Id.* at 536. Since the net result of an officer's qualified immunity "is an *immunity from suit* rather than a mere defense to liability; . . . like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. at 526, *quoted in part in Hunter v. Bryant*, 112 S. Ct. at 536.

Since Gilman allowed the case to go to trial without moving to have his affirmative defense of qualified immunity decided pretrial, he effectively lost the main benefit of the defense. When he argued it in his Rule 50 motion at the close of the evidence, Transcript of Trial ["Tr."] at 153-62, the court denied the motion and required the issue of the reasonableness of Gilman's use of force to go to the jury "because there is sufficient dispute as to what went on." *Id.* at 217.

of a Jarvis' clearly established rights under the Fourth Amendment, and Gilman does not suggest to the contrary. Hence Gilman would have been entitled to qualified immunity from liability (1) if the force he used was reasonable, *i.e.* not excessive or (2) if his actions in seizing Jarvis conformed to what a reasonable officer could have believed to be the use of reasonable force in the circumstances, *even if* the force he used was found by a judge to have been excessive. For a trial or appellate judge to be able to rule as a matter Of law that Gilman used reasonable force in seizing Jarvis, or that a reasonable officer could have acted mistakenly, but reasonably, in the belief that the force used was reasonable, Gilman had to demonstrate the existence of sufficient factual basis for such a holding, either from undisputed facts or from Jarvis' version of disputed facts. *Karnes v. Skrutski*, 62 F.3d at 496.[6]

■ Virtually the only undisputed facts are that Gilman was notified of a fight by his partner, that Jarvis did not resist, and that Jarvis was not arrested. Since what Gilman actually did in apprehending Jarvis was disputed, we are required to accept the Jarvis' rendition in determining Gilman's entitlement to qualified immunity. Jarvis and his companions testified that he had been knocked to the ground by the crowd and was not wrestling with anyone when Gilman grabbed him, twisted his arm behind his back, and held him that way for about ten minutes despite being told by the friends and Gilman's partner that Jarvis had not been involved in the fight. We hold that Gilman did not demonstrate the existence of a sufficient factual basis for either the trial judge or this Court to be able to rule as a matter of law that he used reasonable force in apprehending Jarvis, or that a reasonable officer could have acted reasonably but mistakenly in the belief that the force used was not

[6] We find persuasive the reasoning of the United States Court of Appeals for the District of Columbia Circuit in holding that summary judgment was inappropriate where material facts are in dispute even under the objective inquiry required by *Harlow v. Fitzgerald*, 457 U.S. 800, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982), noting that "a trial court's function is to ascertain whether disputed facts exist, not to try them." *McSurely v. McClellan*, 225 U.S. App. D.C. 67, 697 F.2d 309, 320-21 (D.C. Cir. 1982) (citation omitted) (cited in *Melo v. Hafer*, 13 F.3d 736, 745-46 (3d Cir. 1994)). The court of appeals pointed out that a trial is compelled "when there is a genuine issue of fact — for example, what a reasonable person in like circumstances should have known . . . ." *McSurely v. McClellan*, 697 F.2d at 321 n.20.

·excessive. The scuffle at issue was at worst a misdemeanor, Jarvis posed no threat to the safety of the officers or others, and he did not in any way resist arrest or attempt to flee. A reasonable jury could and did resolve the disputed issues of fact in Jarvis' favor and thus could and did remove any objectively reasonable basis for Gilman to believe that the force he used in apprehending Jarvis was reasonable.

## C. Inconsistent Verdicts

Gilman argues that the jury's verdicts that he was (1) not liable for common law assault and battery and yet (2) liable for the use of excessive force are irreconcilably inconsistent. A trial court's denial of a Rule 50 motion for allegedly inconsistent verdicts must be upheld if it is possible to reconcile the verdicts on any reasonable theory consistent with the evidence when "'considered in light of the judge's instructions to the jury.'"[7]

■ The trial court instructed the jury that "an assault and battery is an intentional act done by the defendant which results in offensive physical conduct" to which the injured party did not give consent. Tr. at 243. On the claim of deprivation of civil rights and excessive force, the court instructed that Jarvis had to prove that Gilman acted (1) under color of law (2) to deprive Jarvis of his constitutional right by the use of excessive force. Tr. at 245-46. In determining whether excessive force was used, the jury was instructed to consider the need for the use of force under the circumstances; the relationship between the need for force and the actual amount of force used; and the extent of the injury to the plaintiff.[8] These instructions on the excessive force claim are

---

[7] *Vaughan v. Ricketts,* 950 F.2d 1464, 1470 (9th Cir. 1991) (quoting *Toner v. Lederle Laboratories,* 828 F.2d 510, 512 (9th Cir. 1987), *cert. denied* 485 U.S. 942, 99 L. Ed. 2d 282, 108 S. Ct. 1122 (1988)). We adopt this standard of review of inconsistent verdicts. *Cf. Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.,* 369 U.S. 355, 364, 7 L. Ed. 2d 798, 82 S. Ct. 780 (1962) ("Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way.").

[8] The court gave the following instructions on the 1983 Claim:

In determining whether excessive force has been used by a law enforcement officer, you must consider the following factors. Number one, you have to consider the need for the use of force under those circumstances. You have to consider also [number two] the relationship between this need for force and the amount of force that was actually used.

158

consistent with the law, as we have recited it earlier in this opinion.[9]

■ The testimony at trial allowed the jury to reach different, but not inconsistent, verdicts. The verdicts can be reconciled by virtue of the different mental components required for each cause of action.[10] In finding that Gilman did not assault Jarvis, while at the same time finding Gilman liable for the use of excessive force, the jury may well have concluded that Gilman did not intend to cause harmful or offensive contact. Examining the totality of the circumstances, the jury could have found that the force used was nevertheless excessive, regardless of Gilman's intent. The evidence allowed the jury to find that twisting Jarvis's arm to restrain him amounted to the use of unreasonable force in that specific situation. Therefore, the trial judge did not err in allowing the verdict on the 1983 Claim to stand.

---

Number three, consider the extent of the harm or injury done to the plaintiff as a result of the force that was used. And, number four, you must consider whether this force was used by Officer Gilman . . . in a good faith effort to execute his duty as a policeman.

You must judge, Ladies and Gentlemen, the reasonableness of the defendant's actions based on the information that the police officer had at the time and based on the circumstances that existed that caused him to respond to that situation.

In other words, you must determine whether the defendant acted as a reasonable and prudent person acting as a police officer would have done under the circumstances.

You are instructed that every person has the right not to be subjected to unreasonable or excessive force by a police officer or a law enforcement officer. On the other hand, an officer has the right to use such force as is necessary under the circumstances to take the action that he is lawfully taking. Whether or not the force used in the circumstances was unnecessary, unreasonable or violent is an issue to be determined by you in the light of all the surrounding circumstances on the basis of that degree of force which a reasonable and prudent officer would have applied in effecting that action under those particular circumstances.

Tr. at 246-47.

While charge number three could be construed to contain a subjective element ('a good faith effort to execute his duty as a policeman'), the instructions taken as a whole conform to the standard of objective reasonableness set forth in *Graham v. Connor*, 490 U.S. 386, 397, 104 L. Ed. 2d 443, 109 S. Ct. 1865 (1989).

[9] See text at pp. 6-8.

[10] A common law tort of assault and battery requires an intent on the part of the actor to cause a harmful or offensive contact. 14 V.I.C. § 292. In contrast, the totality of circumstances is the central focus of an excessive force constitutional tort. *Graham v. Connor*, 490 U.S. at 396-97.

159

## CONCLUSION

The lower court did not err in sending the claim for violation of Jarvis's civil rights pursuant to 42 U.S.C. § 1983 against Gilman in his individual capacity to the jury. Additionally, the lower court was correct in denying Gilman's motion for judgment as a matter of law. This Court affirms the Territorial Court on all the issues raised in this appeal. An appropriate order will be entered.

### ORDER OF THE COURT

AND NOW, this 5th day of March, 1996, after careful review of the record and having considered the submissions of the parties; and for the reasons set forth in the Court's accompanying Opinion of even date;

IT IS ORDERED:

THAT the Territorial Court's Judgment dated May 24, 1990 is AFFIRMED.